IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Angela M. Wright, | ) | |
| | ) | Civil Action No. 8:11-cv-2439-TLW-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying her claim for supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

In December 2007, Plaintiff protectively filed an application for SSI alleging a disability as of September 1, 2006.[3]  [R. 132–35.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 58–59, 70–74, 80–82.]  On July 16, 2008, Plaintiff requested a hearing before an administrative

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

[3]Plaintiff previously filed applications for disability benefits on September 28, 2006, alleging an onset date of June 1, 2004.  [R. 56–57.]  These applications were denied initially on June 6, 2007, and Plaintiff did not further appeal. [R. 60–69.]

law judge ("ALJ") [R. 83–85], and on December 4, 2009, ALJ Thomas G. Henderson conducted a de novo hearing on Plaintiff's claim [R. 21–55].

The ALJ issued a decision on March 5, 2010 finding Plaintiff was not disabled under the Social Security Act ("the Act"). [R. 10–20.] At Step 1,[4] the ALJ found Plaintiff had not engaged in substantial gainful activity since December 3, 2007. [R. 12, Finding 1.] At Step 2, the ALJ determined Plaintiff had severe impairments of fibromyalgia, left shoulder impingement, degenerative disc disease, and depression. [R. 12, Finding 2.] The ALJ noted that, while Plaintiff reported pseudogout and was diagnosed on one occasion with mild mental retardation, these impairments were nonsevere. [*Id.*] At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 13, Finding 3.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following findings as to Plaintiff's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform a significant range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day. The claimant can occasionally climb, crouch, crawl, stoop, balance, kneel, and be in contact with the general public and co-workers. She cannot perform production, quota work or climb ladders, scaffolds, or ropes. Additionally, she is limited to the performance of simple, repetitive[] work. Such a residual functional capacity is well supported by the weight of the evidence of record.

---

[4] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 14, Finding 4.]  As a result of her RFC, at Step 4, the ALJ found Plaintiff unable to perform any past relevant work.  [R. 18, Finding 5.]  At Step 5, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 19, Finding 9.]  Accordingly, the ALJ found Plaintiff had not been under a disability since December 3, 2007, the date the application was filed.[5]  [R. 19, Finding 10.]

Plaintiff requested Appeals Council review of the hearing decision [R. 5], and on July 15, 2011, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review [R. 1–4; 20 C.F.R. § 416.1481]. Plaintiff filed this action for judicial review on September 12, 2011.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence because

1.    the ALJ's RFC findings are inconsistent and incomplete when compared to the assessment provided by Dr. Bishop, a treating physician, which the ALJ indicated he accorded significant weight [Doc. 17 at 18–23; Doc. 20 at 1–3];

2.    the ALJ erred in determining Plaintiff's RFC with respect to her mental impairments [Doc. 17 at  23–29; Doc. 20 at 3–5]; and

3.    the ALJ failed to properly evaluate Plaintiff's credibility [Doc. 17 at 29–34; Doc. 20 at 5].

Plaintiff asks that the Court reverse the ALJ's decision and award benefits without the additional step of remanding the case to take additional evidence.  [Doc. 17 at 35.]

---

[5]SSI may not be awarded for any period of time that precedes the date of the claimant's application.  *See* 20 C.F.R. § 416.501 ("Payment of benefits may not be made for any period that precedes the first month following the date on which an application is filed.").  An application for SSI remains in effect until the hearing decision is issued.  *See* 20 C.F.R. § 416.330 ("If there is a hearing decision, [the claimant's] application will remain in effect until the hearing decision is issued.").  Therefore, the time period relevant to Plaintiff's claim runs from December 3, 2007, the date she applied for SSI, through March 5, 2010, the date of the ALJ's decision.

The Commissioner contends the ALJ's decision is supported by substantial evidence because

1.    the ALJ properly evaluated Dr. Bishop's opinion and, while the ALJ gave Dr. Bishop's opinion significant weight, the absence of some of the limitations Dr. Bishop reported does not represent an inconsistency in the ALJ's decision [Doc. 19 at 11–13];

2.    the ALJ's mental RFC finding was not inconsistent with the assignment of significant weight to Dr. Bishop's opinion [*id.* at 14–15]; and

3.    the ALJ properly evaluated Plaintiff's credibility [*id.* at 15–17].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

4

[Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[6] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See*

---

[6]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699

F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir.

9

1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[7]    20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the

---

[7]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

claimant's residual functional capacity[8] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").    Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[9]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we

---

[8]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

[9]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 416.969a(c)(1).

have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

14

pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

15

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

16

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Brief Medical History**

Plaintiff alleges she became unable to work on September 1, 2006 due to fibromyalgia, spinal impairments, chronic pain, nerve problems, and mental impairments including depression.  [R. 69.] Malcolm H. Horry, M.D., examined Plaintiff on February 28, 2008, in connection with her disability claim.  [R. 408–14.] During the examination, Plaintiff reported a two-year history of generalized body pain, including pain in her muscles from her neck to her feet that rendered her unable to work or do housework.  [R. 408.] Plaintiff also reported that medication provided no relief, she was currently taking Lyrica, and she was extremely depressed due to her inability to work.  [*Id.*]

17

Upon examination, Dr. Horry found Plaintiff had full strength, normal reflexes, and normal sensation in all extremities, and her range of motion examination was inconsistent; Dr. Horry noted Plaintiff demonstrated highly restricted range of motion in her neck and wrist on examination, but when not being tested, she had full range of motion of her neck and wrist.  [R. 411.]  Dr. Horry also found Plaintiff had an antalgic gait, tenderness in all large muscles, extremely limited body movements, and noted she complained of pain with all muscle testing, appeared depressed and tearful, and had intact memory.  [*Id.*] Dr. Horry found it "very possible" that Plaintiff had fibromyalgia but noted her examination was inconsistent and of questionable value.  [R. 412.]  He found no evidence of gouty arthritis and stated that depression seemed to be a significant problem, such that Plaintiff would likely be unfit for any work until her emotional status improved.  [*Id.*]

On April 21, 2008, Plaintiff presented at Savannah Rheumatology Associates complaining of generalized muscle pain without weakness or stiffness, suicidal thoughts, and interrupted sleep.  [R. 442–43.]  Shannon Murillo, P.A.-C., found Plaintiff had multiple myofascial trigger points and was positive for psychogenic rheumatism.  [R. 442.]  Ms. Murillo diagnosed fibromyalgia, sleep disturbance, and mood disturbance and adjusted Plaintiff's medication regimen.  [*Id.*]

On June 11, 2008, Plaintiff presented at Coastal Empire Community Mental Health complaining that she was depressed (sometimes with suicidal thoughts), withdrawn, and forgetful.  [R. 447–48.]   She reported low energy, poor sleep, and an inability to do

anything because of pain. [R. 447.] Kellie C. Bishop, M.D., diagnosed depression and a Global Assessment of Functioning ("GAF") score of 55.[10] [R. 448.]

In August 2008, Plaintiff complained to Dr. Bishop that she slept excessively, had low energy and bad memory, and related that she had cut her ex-husband with a butter knife. [R. 510.] Dr. Bishop diagnosed depression and continued Plaintiff's medications, Wellbutrin and Trazodone. [*Id.*] In September 2008, Plaintiff complained of hearing voices, insomnia, and forgetfulness but reported improvement in her energy level. [R. 509.] Dr. Bishop noted psychotic symptoms and added Geodon to Plaintiff's medication regimen. [*Id.*] In November 2008, Plaintiff reported that she very rarely heard voices, but she complained of forgetfulness, low energy, an inability to work because of pain, and an inability to tolerate Geodon. [R. 507.] Dr. Bishop increased her dosage of Wellbutrin and discontinued Geodon. [*Id.*] Plaintiff complained of poor concentration and memory and variable energy level and reported hearing voices again in December 2008. [R. 506.] Dr. Bishop diagnosed major depressive episode with psychotic symptoms and prescribed Navane, an antipsychotic medication. [*Id.*]

In February 2009, Plaintiff reported to Dr. Bishop that she was feeling better but complained of fatigue and forgetfulness. [R. 505.] Dr. Bishop noted pain as a "major issue" and continued Plaintiff's medications. [*Id.*] In April 2009, Plaintiff complained of depression, poor sleep, and difficulty with concentration. [R. 504.] In August 2009, Dr.

---

[10]A GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., Text Revision 2000) [hereinafter DSM-IV-TR].

Bishop noted Plaintiff's condition was essentially unchanged and continued her medications. [R. 502.]

Plaintiff saw John H. Moore, M.D., as a new patient on June 3, 2009. [R. 531–32.] She complained of total body muscle aches, difficulty sleeping, and no relief from medication, and reported a diagnosis of fibromyalgia. [R. 531.] Dr. Moore found no abnormalities upon examination. [R. 532.] He prescribed Naproxen and Ambien and noted Plaintiff's gout was controlled. [*Id.*]

On August 10, 2009, Plaintiff presented at Southeast Spine Care & Pain Management with complaints of shoulder, back, and hip pain. [R. 482–86.] Emily Baise, P.A.-C., found Plaintiff had normal gait and station, decreased range of motion of the lumbar spine, tenderness over the lumbosacral spine, normal muscle strength and tone, normal range of motion of the knee and ankle, and decreased sensation in the L3 and L4 dermatomes on the left and in the L5 and S1 dermatomes on the right. [R. 484–86.] An MRI of Plaintiff's lumbar spine showed disc protrusions at L4-5 and L5-S1 without central canal or neural foraminal stenosis. [R. 492.] On August 24, 2009, Ms. Baise found Plaintiff was coherent and calm and had adequate judgment and insight, normal gait and station, and decreased range of motion in the lumbar spine. [R. 489–90.] Ms. Baise diagnosed lumbosacral spondylosis without myelopathy and thoracic/lumbar radiculopathy/myelopathy and recommended physical therapy and epidural steroid injections. [R. 490–91.]

On December 1, 2009, Dr. Bishop reported that Plaintiff had poor coping skills, often broke down in tears, had impaired concentration due to poor sleep, was very nervous and unable to handle stress, and was very forgetful. [R. 513–15.] She reported that Plaintiff had poor ability to complete job instructions, behave in an emotionally stable manner,

demonstrate reliability, deal with work stress, and maintain attention and concentration. [R. 513.] Dr. Bishop found Plaintiff had good ability to carry out simple job instructions and maintain personal appearance, and fair (i.e., limited but satisfactory) abilities to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, carry out detailed instructions, and relate predictably in social situations. [R. 513–14.]

**The ALJ's RFC Analysis**

Plaintiff argues the ALJ's RFC analysis is inconsistent and incomplete when compared to Dr. Bishop's assessment. [Doc. 17 at 20–23.] Specifically, Plaintiff contends the ALJ failed to properly consider Dr. Bishop's opinion and failed to properly account for Plaintiff's limited ability to maintain attention and concentration in a work setting. [*Id.* (citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) to support her argument regarding the ALJ's findings on her ability to concentrate).[11]]

---

[11] The Court notes that *Ramirez* is distinguishable in this case. In *Ramirez*, the Third Circuit held that in a hypothetical question to a vocational expert, a restriction to "simple tasks" did not adequately encompass the ALJ's earlier finding that the claimant "often" suffered from deficiencies in concentration, persistence, or pace. 372 F.3d at 554. The Third Circuit noted that "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." *Id.* In *Stubbs–Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.* at 1174. The Ninth Circuit held that, in that case, a restriction to "simple tasks" in a hypothetical question to a vocational expert adequately incorporated a doctor's opinion that the claimant was "'moderately limited'" in her ability to "'perform at a consistent pace without an unreasonable number and length of rest periods.'" *Id.* at 1173. The Ninth Circuit distinguished *Ramirez*, noting that a doctor in *Ramirez* had identified a specific functional restriction and its medical basis rather than simply opining that the claimant's pace was "moderately limited." *Id.* at 1175. The Fourth Circuit has distinguished *Ramirez* and followed the Ninth Circuit's reasoning in a similar case. *See Thompson v. Astrue*, 442 F. App'x 804, 806 n.2 (4th Cir. 2011) (unpublished opinion) ("The Third and Eleventh Circuits both noted that 'there may be a valid explanation for this omission from the ALJ's hypothetical,' but such explanation was not supported by the record. Here, although the ALJ gave [the claimant] the benefit of the doubt at step two, finding her depression and anxiety disorders were severe impairments, at step four the ALJ noted that [she] had been successfully treated and therefore concluded that her mental residual functional capacity ('RFC') was not restricted." (quoting *Ramirez*, 372 F.3d at 55)). Therefore, the Court finds the Third Circuit's reasoning in *Ramirez* inapplicable in this case.

The Administration has provided a definition of residual functional capacity ("RFC") and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify the Plaintiff's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy.  *Id.*

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, including those that are not severe.  *Id.* at 34,477.  While a non-severe impairment standing alone may not significantly limit a claimant's ability to do basic work activities, it may be crucial to the outcome of a claim when considered in combination with limitations or restrictions due to other impairments.  *Id.*  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall

22

be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B),

1382c(a)(3)(G).

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to
> medically determinable impairments. It is incorrect to find that
> [a claimant] has limitations or restrictions beyond those caused
> by his or her medical impairment(s) including any related
> symptoms, such as pain, due to factors such as age or height,
> or whether the [claimant] had ever engaged in certain activities
> in his or her past relevant work (e.g., lifting heavy weights.)
> Age and body habitus (i.e., natural body build, physique,
> constitution, size, and weight, insofar as they are unrelated to
> the [claimant]'s medically determinable impairment(s) and
> related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476.  To assess a claimant's RFC, the ALJ must consider

all relevant evidence in the record, including medical history, medical signs, laboratory

findings, lay evidence, and medical source statements.  *Id.* at 34,477.  SSR 96-8p

specifically states, "[t]he RFC assessment must always consider and address medical

source opinions.  If the RFC assessment conflicts with an opinion from a medical source,

the adjudicator must explain why the opinion was not adopted."  *Id.* at 34,478.

### *The ALJ's Decision*

As previously stated, the ALJ found Plaintiff retained the residual functional capacity

to perform a significant range of light work.  [R. 14, Finding 4.]  Specifically, the ALJ found

Plaintiff was able to lift and carry up to twenty pounds occasionally and ten pounds

frequently; stand, walk, and sit for six hours in an eight-hour day; occasionally climb,

crouch, crawl, stoop, balance, kneel and be in contact with the general public and co-

workers; but could not perform production, quota work, or climb ladders, scaffolds or ropes.

[*Id.*]  Additionally, the ALJ limited Plaintiff to performance of simple, repetitive work.  [*Id.*]

23

In determining Plaintiff's RFC, the ALJ stated that he considered Plaintiff's testimony regarding her limitations, the side-effects of her medications, complaints of pain, depression, anxiety attacks, and crying spells. [R. 14–15.] The ALJ also considered Plaintiff's reports to the Administration that she was unable to undress herself and would be incontinent at least once daily; sometimes had to be fed by her daughter because of severe pain; had difficulty wearing certain clothes due to pain; could not sit or stand more than a few minutes; and suffered from swelling in her hands and legs and from shaking hands. [R. 15.] The ALJ concluded,

> After careful consideration of the evidence, I find that claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment. Treatment notes simply fail to indicate the level of dysfunction alleged by the claimant. A review of the medical evidence of record fails to indicate physical findings consistent with the claimant's allegations. Indeed, while the claimant was f[o]und to have a reduced range of motion with tenderness and an occasional antalgic gait or straight leg raising, no significant muscle weakness, daytime hypersomnolence, atrophy, shaking, or swelling was found. The claimant was able to walk without an assistive device and heel and toe walk. No significant limitations in the claimant's ability to walk, sit, or stand were found upon examination. Additionally, despite her complaints to me, a review of the evidence of records fails to indicate that the claimant complained of such significant limitations to her treating physicians and therapists. Of note, the claimant apparently failed to complain of any incontinence, difficulty feeding or dressing herself, difficulty moving about, or continued side effects from medications. Moreover, treatment notes indicate that despite the claimant's allegations, she reported in September 2009 of only taking Vicodin sparingly. Upon examination in February 2008, the claimant was noted to have inconsistent results with range of motion testing and displayed a greater range of motion when observed generally.

24

> Further medical records indicate that the claimant denied any
> gait problems, loss of strength, or headaches.  The claimant
> displayed inconsistent range of motion testing upon
> consultative examination.  Specifically, during formal testing of
> the range of motion of her wrist and neck, she demonstrated
> highly restricted range of motion and complaints of pain with
> any motion.  Nevertheless, during observation of the claimant
> while she was describing her depression and disability, she
> moved to her left with a full range of motion and rotated the
> neck freely and without evident tenderness.  In October 2009,
> the claimant also reported that she was walking more.

[*Id.*]  In further assessing Plaintiff's complaints of pain, the ALJ went on to explain,

> The claimant's activities of daily living are inconsistent with her
> allegations of such significant functional limitations, but are
> fully consistent with the residual functional capacity described
> above.  The claimant testified that she could only prepare
> simple meals, attend church for a limited period of time, and
> shop for brief periods of time with her family.

> Despite [her] complaints of such significant functional
> limitations and pain, the evidence reveals that the claimant has
> been frequently noncompliant with [her] treatment regimen,
> which suggests that the symptoms may not have been as
> limiting as the claimant has alleged.  Although the claimant
> reported that she was unable to attend her scheduled
> appointments due to forgetfulness as a side effect from her
> medications, she did not apparently complain of such
> significant side effects to her treating or prescribing physicians.
> Moreover, no excessive daytime hypersomnolence or
> confusion was noted upon examination.  Treatment notes also
> indicate that the claimant smoked marijuana following her
> application date, which further limits her credibility.

[R. 15, 17.[12]]

---

[12]The pages of the ALJ's opinion appear out of order in the record before the Court.  The excerpted portion appears on consecutive pages—pages 6 through 7— in the ALJ's opinion.

### *Dr. Bishop's Opinion*

On December 1, 2009, Dr. Bishop completed a Medical Source Statement (mental) rating Plaintiff's abilities to adjust to a job.  [R. 513–15.]  With respect to Plaintiff's ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, and function independently, Dr. Bishop indicated Plaintiff's ability was "fair," meaning that her ability to function was limited but satisfactory.  [R. 513–14.]  Dr. Bishop found, however, that Plaintiff's ability to deal with work stresses and maintain attention/concentration was "poor," meaning that her ability to function in this area is seriously limited but not precluded.  [*Id.*]  Dr. Bishop noted Plaintiff had poor coping skills and often breaks down in tears; does not sleep well, which impairs her concentration; and was very nervous and unable to handle stress.  [R. 513.]

Dr. Bishop further indicated that Plaintiff was forgetful and had poor ability to adjust to complex job instructions, had fair ability to adjust to detailed but not complex instructions, and had good ability to adjust to simple job instructions.  [R. 514.]  Dr. Bishop also opined that Plaintiff's ability to maintain personal appearance was good and her ability to relate predictably in social situations was fair, but her ability to behave in an emotionally stable manner or demonstrate reliability was poor.  [*Id.*]  Dr. Bishop also opined that Plaintiff would be able to manage any benefits received.  [R. 515.]

The ALJ considered the assessment of Plaintiff's mental functions completed by Dr. Bishop and accorded it significant weight due to Dr. Bishop's treating relationship with Plaintiff.  [R. 17.]  The ALJ also noted that he accorded significant weight to Dr. Bishop's opinion and accounted for Dr. Bishop's limitations in the questions posed to the vocational

expert by limiting Plaintiff to work that is simple and repetitive and does not involve quotas or production goals.  [*Id.*]

### Analysis

Plaintiff appears to disagree with only the mental portion of the ALJ's RFC assessment.  [*See* Doc. 17 at 20–29.]  The Court notes Dr. Bishop found Plaintiff had impaired concentration due to poor sleep and that her ability to deal with work stresses and maintain attention/concentration was "poor," meaning Plaintiff's ability to function in this area is seriously limited but not precluded.  [R. 513–15.]  Even in light of her limitations in concentration, Dr. Bishop opined that Plaintiff's ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, and function independently was "fair," meaning that her ability to function was limited but satisfactory.  [R. 513.]  Dr. Bishop's opinion is consistent with those of state medical examiners Dr. Williams and Dr. Vidic, who both determined Plaintiff suffered moderate limitations in concentration but could still perform simple, repetitive tasks without special supervision, attend work regularly, and accept feedback, and would do best in a job that did not require continuous interaction with the general public.[13]  [R. 473, 479.]  While Plaintiff argues Dr.

---

[13]Mark A. Williams, Ph.D., reviewed the record and concluded that Plaintiff had depressive and chronic pain disorders that resulted in mild limitations in activities of daily living, moderate limitations in social functioning, moderate limitations in concentration, and no episodes of decompensation.  [R. 463–76.]  In a mental residual functional capacity assessment, Dr. Williams indicated that Plaintiff had no limitations in most areas of work-related mental functioning and moderate limitations in the following areas: understanding and remembering detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday/workweek without interruptions from psychologically based symptoms; and interacting appropriately with the general public.  [R. 477–78.]  Dr. Williams concluded Plaintiff could perform single, repetitive tasks without special supervision, attend work regularly, and accept feedback, and would do best in a job that did not require continuous interaction with the general public.  [R. 479.]

Jeffrey Vidic, Ph.D., reviewed the record and found Plaintiff had depressive and chronic pain disorders that caused moderate limitations in activities of daily living, social functioning, and concentration, and no episodes of decompensation.  [R. 416–29.]  In a mental residual functional capacity assessment, Dr. Vidic indicated that Plaintiff had no limitations in most areas of work-related mental functioning and moderate

Bishop's opinion dictates the imposition of stricter limitations in the RFC, Plaintiff has failed to point the Court to evidence of record or legal authority that would support her position.

Upon review, the Court finds the ALJ's RFC determination with respect to Plaintiff's mental impairment is supported by substantial evidence.[14]  The ALJ considered all relevant evidence in the record and considered the limitations and restrictions imposed by Plaintiff's impairments, including Plaintiff's mental impairments.  The ALJ found Plaintiff was limited "to work that is simple and repetitive and does not involve quotas and production goals," which represents Plaintiff's moderate deficiencies in concentration, persistence, and pace. *See Lawson v. Astrue*, No. 3:10-212-HFF-JRM, 2011 WL 4502026, at *13 (D.S.C. July 29,

---

limitations in the following areas: understanding and remembering detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday/workweek without interruptions from psychologically based symptoms; and interacting appropriately with the general public. [R. 430–31.] Dr. Vidic concluded Plaintiff could perform single, repetitive tasks without special supervision, attend work regularly, and accept feedback, and would do best in a job that did not require continuous interaction with the general public.  [R. 432.]

[14] Regarding Plaintiff's depression, which the ALJ found was severe but failed to meet Listing 1.00 and 12.00, the ALJ stated

> following a thorough review of the evidence of record, I find that this condition has resulted in moderate limitations in activities of daily living, moderate limitations in social functioning, moderate deficiencies in concentration, persistence, and pace and no episodes of decompensation of extended duration. Additionally, the medical evidence fails to establish that the claimant suffers from any residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate, a history of 1 or more years inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement; or complete inability to function independently outside the area of one's home.  The claimant has required limited treatment as a result of her mental health condition and has not required any emergency room treatment or inpatient hospitalization.  Despite her complaints, limited findings were noted upon examination and the claimant was able to get along well with her treating and examining physicians as well as office staff.  She was described as a good historian and was able to follow directions during testing.  While the claimant has reported limited activities of daily living, she reported that this was a result of her fibromyalgia condition and joint pain generally.  Nevertheless, as a result of her depression with difficulty being around the general public, I have accorded moderate limitations. . . .

[R. 13–14.]

2011) (holding an ALJ "captured his finding . . . that Plaintiff had 'moderate' limitations in concentration, persistence, or pace in his RFC determination and hypothetical question to the VE by finding that she was limited to entry-level unskilled work, which he stated consisted of simple repetitive tasks"), *report and recommendation adopted by* 2011 WL 4527370 (D.S.C. Sept. 29, 2011).   The ALJ thoroughly explained the basis for this determination [R. 13–17], and the accommodation he made for Plaintiff's mental limitations in her RFC is essentially consistent with Dr. Bishop's opinion [R. 513–15].  Accordingly, the Court concludes the ALJ's RFC analysis is supported by substantial evidence.

**The ALJ's Credibility Analysis**

Plaintiff contends the ALJ did not perform a proper credibility analysis because he failed to properly evaluate the evidence as supportive of Plaintiff's credibility.  [Doc. 17 at 32–34.]  Specifically, Plaintiff contends the ALJ erred by finding her noncompliant with treatment, discrediting her allegations due to her failure to complain of medicinal side effects to her treating physicians, and discrediting her credibility because hypersomnolence and confusion were not noted on examination.  [*Id.* at 32–33.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions"). Additionally, the ALJ is not required to accept unquestioningly all alleged side effects of medications; complaints of side effects may properly be discredited by inconsistent evidence, as long as the ALJ fully explains why the claimant's testimony should be discredited. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (relying upon the claimant's activities to discredit "allegedly disabling 'doped up' effect" of medication).

### *The ALJ's Decision*

Here, the ALJ found that, while Plaintiff had a medically determinable impairment that could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not fully credible. [R. 15.] Specifically, the ALJ discredited Plaintiff's allegations of hypersomnolence, confusion, and medicinal side effects based on her failure to complain of such limitations to her treating physicians and therapists. [R. 15, 17.] Additionally, the ALJ noted Plaintiff was frequently noncompliant with her treatment regimen and failed to attend scheduled appointments; although Plaintiff alleged the failure was due to her forgetfulness as a side effect of medications, the ALJ again noted Plaintiff did not complain to her treating or prescribing physicians of such side effects. [R. 17.]

The ALJ also considered Plaintiff's activities of daily living and concluded they were inconsistent with her allegations of such significant limitations. [R. 15.] The ALJ considered testimony of Plaintiff's friends Kenneth Hughes and Chanelle Pippins, who reported that Plaintiff was so limited as to be disabled, but the ALJ gave their testimony

30

minimal weight because it was inconsistent with Plaintiff's presentation upon routine exam, her treatment record, objective findings upon exam, and her activities of daily living.  [R. 16.]

### Analysis

After reviewing the record, the Court finds there is substantial evidence to support the ALJ's finding that the evidence of record does not corroborate Plaintiff's testimony that her medications were causing significant side effects.  Plaintiff has failed to cite treatment notes or other medical evidence that show Plaintiff complained of fatigue, headaches, dizziness, or sleepiness or that she sought alternative treatment because of the alleged side effects of her medications.

As to Plaintiff's additional allegations regarding her limitations, although Plaintiff alleges extreme inactivity due to her impairments,  the ALJ noted the medical evidence did not show any signs of significant muscle weakness, daytime hypersomnolence, atrophy, shaking, swelling, or other indications to support her claims.  [R. 15.]  The ALJ noted Plaintiff reported her limited activities were the result of her fibromyalgia condition and joint pain generally.  [R. 13–14.]  The ALJ noted Plaintiff's fibromyalgia did not require a significant amount of specialized care and that Plaintiff generally relied on prescription medication management.  [R. 16.]  Additionally, records show Plaintiff took her pain medication "sparingly" and that, upon examination, Plaintiff had normal heel to toe walking with normal station, a decreased range of motion, and positive straight leg raising with normal muscle tone and strength.  [R. 484–85, 490, 527–28.]

Thus, the ALJ properly considered inconsistencies between Plaintiff's testimony and other evidence of record in evaluating the credibility of her subjective complaints, and he

31

adequately articulated his reasons for his credibility assessment in his decision.  *See* SSR 96-7p, 61 Fed. Reg. at 34,485; *Hammond*, 765 F.2d at 426.   Therefore, the Court concludes the ALJ's credibility determination is supported by substantial evidence.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

December 11, 2012
Greenville, South Carolina